```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION

 3                  CASE NUMBER 12-20071-CR-SEITZ

 4   UNITED STATES OF AMERICA,
                                          Courtroom 13-3
 5             Plaintiff,
                                          Miami, Florida
 6      vs.
                                          November 21, 2012
 7   FRANCISCO CUBERO,
                                          (Pages 1 - 42)
 8             Defendant.

 9   ==================================================

                      SENTENCING PROCEEDINGS
10         BEFORE THE HONORABLE FEDERICO A. MORENO
              CHIEF UNITED STATES DISTRICT JUDGE
11   ==================================================

12   APPEARANCES:

13   FOR THE GOVERNMENT:        VANESSA S. JOHANNES, AUSA
                                United States Attorney's Office
14                              99 Northeast 4th Street
                                Miami, Florida 33132
15                                             305.961.9023

16
     FOR THE DEFENDANT:         MANUEL GONZALEZ, JR.
17                              2000 Ponce de Leon Boulevard
                                Suite 614
18                              Coral Gables, Florida 33134
                                               305.444.1400
19

20   REPORTED BY:              GILDA PASTOR-HERNANDEZ, RPR, FPR
                               Official United States Court Reporter
21                             Wilkie D. Ferguson Jr. US Courthouse
                               400 North Miami Avenue - Suite 13-3
22                             Miami, Florida  33128   305.523.5118
                               gphofficialreporter@gmail.com
23

24

25
```

**TABLE OF CONTENTS**

Page

Reporter's Certificate ..................................... 42

**EXHIBITS**

| Exhibits | Marked for Identification | | Received in Evidence | |
|---|---|---|---|---|
| Description | Page | Line | Page | Line |

1          (The following proceedings were held at 10:54 a.m.)

2          THE COURT:  Let me do a sentencing for Judge Seitz, and

3     then we'll finish.

4          United States of America versus Francisco Cubero,

5     12-20071-CR-Seitz.  On behalf of the Government, please.

6          MS. JOHANNES:  Good morning, Your Honor.  Vanessa

7     Johannes on behalf of the United States.

8          THE COURT:  On behalf of the defendant at the lectern

9     with your client, please.

10          MR. GONZALEZ:  Good morning, Your Honor.  Manual

11     Gonzalez, Jr.

12          THE COURT:  At the lectern with your client.

13          MR. GONZALEZ:  Okay.  Thank you.

14          Manual Gonzalez, Jr., Your Honor, with Francisco Cubero

15     present before the Court.

16          THE COURT:  And the probation officer, please.

17          THE PROBATION OFFICER:  Good morning.  Riselda Ruiz

18     standing in for Wendy Squitero.

19          THE COURT:  Thank you for being here.

20          Good morning, Mr. Cubero.  I have read and reviewed the

21     Presentence Investigation Report, the letters, the objections,

22     the sentencing memorandum, the first supplement, the second

23     supplement --

24          MS. JOHANNES:  The Government's response?

25          THE COURT:  -- the Government's response.  I've

1   paper-clipped things, so I'm very familiar.  So I assume that

2   you, of course, have read it as well.  Am I right, sir?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  As you all know -- here, Shirley.  As you

5   all know, the first obligation of the Court in sentencing a

6   defendant is to properly calculate the guidelines, and after

7   properly calculating the guidelines, the next obligation of the

8   Court is to sentence a defendant but to use 18 U.S.C. Section

9   3553(a).

10           The probation officer in this case has calculated the

11  guidelines under an adjusted offense level of 34, Criminal

12  History Category I.  The guidelines for Counts 1, 2 and 3 are

13  151 to 188 months, and is there a minimum mandatory for any of

14  the counts?

15           MS. JOHANNES:  Yes, Your Honor, there's a five-year

16  mandatory minimum.

17           THE COURT:  For all the counts?

18           MS. JOHANNES:  For the distribution count, Your Honor,

19  which I believe in this case is Count 1.

20           THE COURT:  Count 1, five-year minimum mandatory.

21           So the first decision is whether there are any

22  objections.  Any objections from the Government?

23           MS. JOHANNES:  There are no objections from the

24  Government, Your Honor.

25           THE COURT:  Any objections from the defense?

 1          MR. GONZALEZ:  Yes, Your Honor.

 2          THE COURT:  Go ahead.

 3          MR. GONZALEZ:  Your Honor, we have an objection to

 4   paragraph 20 at Page 7 of the presentence investigation.

 5          THE COURT:  All right.  Hold on.  Hold on.  Let me grab

 6   it, and that's the way to work it.  Page 20 you said.

 7          MR. GONZALEZ:  Yes, Your Honor.  Paragraph 20.  I'm

 8   sorry.  Paragraph 20.

 9          THE COURT:  Because I was going to say, I don't think

10   it went that long.  Paragraph 20, on Page 7.

11          And it says, you have an objection to the two-level

12   increase that is being suggested because the offense involved

13   distribution of child pornography other than described in

14   subdivisions A through E.  The offense level is increased by 2

15   levels, and he pled guilty to distribution, right?

16          MR. GONZALEZ:  Yes, Judge.

17          THE COURT:  Okay, but he doesn't deserve a two-level

18   increase because --

19          MR. GONZALEZ:  Your Honor, for two reasons.  One is,

20   Judge, that with regard to how Mr. Cubero committed the crimes

21   of distribution of the material containing the child

22   pornography, it's important to understand that this was a

23   peer-to-peer file sharing software that Mr. Cubero utilized,

24   okay, that he had on his computer system.  That peer-to-peer

25   software is installed in one's computer, and with that you can

1    download music.  It's not like for child pornography, but you

2    can download other things.

3              THE COURT:  I understand.

4              MR. GONZALEZ:  Pardon me?

5              THE COURT:  I understand.

6              MR. GONZALEZ:  Yes, sir.

7              THE COURT:  But it was in this case.

8              MR. GONZALEZ:  In this case, Judge, what happened is

9    that the software is installed in the computer, then the user

10   can designate any data on his hard drive to be shared through

11   the peer-to-peer software or you can put "not share."

12             In this case, what basically happened is that

13   Mr. Cubero had some of the child pornography that was on shared

14   folders.  That's how in December of 2011, the agents went in and

15   were able to extract.  I believe it was like 17 files from his

16   computer.

17             But Your Honor, with regard to how that enhancement

18   applies to Mr. Cubero, there is no evidence that Mr. Cubero did

19   any active distribution.  What qualifies him is the fact that he

20   has that peer-to-peer, and that's why I cited --

21             THE COURT:  Did he not use a file sharing network --

22             MR. GONZALEZ:  Yes, he did.

23             THE COURT:  -- to download child pornography?

24             MR. GONZALEZ:  Yes, he did, Your Honor.

25             THE COURT:  Did he not store his files in a shared

1    folder on the network?

2            MR. GONZALEZ:  Yes, he did, Your Honor.

3            THE COURT:  Did he not allow other users to access his

4    file.

5            MR. GONZALEZ:  Well, that's the thing, other users did

6    have access, but there is really, Judge, there no evidence that

7    he did any exchanging of files with anyone.  He did download for

8    himself and what I'm getting at is --

9            THE COURT:  The Eleventh Circuit has not spoken on this

10   specific issue.

11           MR. GONZALEZ:  Well, Judge, the Eleventh Circuit has

12   spoken on two cases, Petersen and Spriggs and those cases deal

13   with the sharing capabilities and they also go into whether or

14   not, you know, the person downloaded it and did he possess it

15   for viewing.

16           THE COURT:  And those case don't help you.

17           MR. GONZALEZ:  Those cases in a way don't help me, and

18   what I'm saying is, Judge, you can apply those cases --

19           THE COURT:  How about this Fourth Circuit case?  What

20   do I do with United States versus Layton, L-a-y-t-o-n, from the

21   Fourth Circuit holding that the use of a peer-to-peer file

22   sharing program constitutes distribution?  What do I do with

23   that?  Disagree with the Fourth Circuit?

24           MR. GONZALEZ:  Yes, as it applies to Mr. Cubero,

25   because what is actually going on with Mr. Cubero --

1          THE COURT:  But I would have to disagree with the

2    Seventh Circuit, too, in Carani, C-a-r-a-n-i, and in Shaffer

3    with the Tenth Circuit, right?

4          MR. GONZALEZ:  Yes, sir.

5          THE COURT:  That's an uphill battle, no?

6          MR. GONZALEZ:  Yes, sir.  Yes siree, Your Honor, but

7    what I'm saying is, Judge, part of this, so the Court can be

8    well aware, that Mr. Cubero did not actively distribute any

9    material in the regular sense.  It's basically that he possessed

10   that and had the ability to download and the fact that you keep

11   in share versus -- if he would have hit the next key down, I

12   gather, I don't know how it particularly works, that says, do

13   not share, then we wouldn't even be here because the agents

14   wouldn't have been able to go in.  So what I'm getting at is his

15   conduct is basically -- it's passively sharing.  It's not

16   active.  He's not like taking action himself, you know, sending

17   stuff to other people.

18         He basically used it to download, Your Honor, and

19   that's what I wanted to bring to the Court's attention.

20         THE COURT:  I understand.

21         MR. GONZALEZ:  And as applied, that is my objection as

22   it applies to this gentleman.

23         THE COURT:  Any other objection?

24         MR. GONZALEZ:  Not with regard to that one, Your Honor.

25         THE COURT:  Or anything else.

1          MR. GONZALEZ:  Judge, also, you know, what I did argue

2     also is that by the fact that we have a mandatory minimum of

3     five years, that this conduct is basically -- he's being

4     punished, and it's in a way like a double counting, you know,

5     type of argument, I know it's an analogy to it, but it's

6     basically the other point that I wanted to make.

7          THE COURT:  Okay.  And by the way, I know there are a

8     lot of friends and relatives and I've read the reports and

9     everything about the case just so that people know.  We don't

10    have a parade of people asking obviously for the least amount of

11    time.  The lawyer has done an excellent job in presenting all

12    the documentation and reports, and the Government has done a

13    good job in responding as well.  They know that as lawyers.

14         The reason I'm mentioning that is so that people know

15    that it's not like in television where people just come in and

16    they cry, and I assume the family and the relatives want the

17    least amount of time possible.

18         So now, I will ask the Government what you think I

19    should do as far as sentence, I would ask the defense counsel,

20    and then I'll hear from the defendant.

21         MR. GONZALEZ:  Judge, there was one more objection.

22    I'm sorry.

23         THE COURT:  I'm sorry.  No, go ahead.

24         MR. GONZALEZ:  And that was that we were asking for a

25    two-level decrease pursuant to Section 2G2.2(b)(1), and that his

1   conduct, Judge, based on the arguments that I just presented to

2   the Court, is more in line with the receipt and obtaining of

3   material for his own personal use.

4           Mr. Cubero certainly did not intend to traffic --

5           THE COURT:  But he pled guilty to distribution.

6           MR. GONZALEZ:  Distribution.

7           THE COURT:  Aren't you stuck with that?

8           MR. GONZALEZ:  But this is --

9           THE COURT:  Not you but your client, but you're stuck

10  as far as --

11          MR. GONZALEZ:  The distribution, yes, and that was the

12  other enhancement, but with this, I'm asking the Court to take a

13  look at that this conduct is more in line with the receipt and

14  obtaining the material for his personal use.  There's not an

15  intention to traffic in, and per se, distribute the child

16  pornography.  So that would be --

17          THE COURT:  How many images?

18          MR. GONZALEZ:  Images, there were 200 still images and

19  I think it was 17 videos.  It made it a total of 1,475 images.

20          THE COURT:  That's a lot of personal use, would you

21  say?

22          MR. GONZALEZ:  But during a very short period of time.

23  You know, we're talking about a six, seven-month period of time

24  wherein I believe that the evidence shows, and based on the

25  discovery provided, that he went on to download anywhere between

1    four, five, six, seven occasions.  There's actually lulls of

2    periods of time, two or three months that he actually did not

3    even go.  And the thing about it, Judge, as the Court is well

4    aware because of the technology that we have nowadays, on one

5    occasion, you can download a video or several videos and

6    download thousands of images.

7            So that's what my objection to that is, and that's the

8    only other objection, Judge.

9            THE COURT:  All right.  What does the Government wish

10   to say regarding sentencing?

11           MS. JOHANNES:  Okay.  Judge, with respect to the

12   objections to the PSI --

13           THE COURT:  You've responded in writing.

14           MS. JOHANNES:  -- we'll rely on our response in

15   writing.

16           We are asking in this case that the defendant be

17   sentenced to the low end of the sentencing guideline, 151

18   months.

19           THE COURT:  Okay.  Why?

20           MS. JOHANNES:  Why, Judge?  Judge, this is not a case

21   where -- I understand and I've read all the briefings that

22   Mr. Gonzalez has filed, but he has to understand that this is

23   not a case where we just look at the number of images and take

24   that at face value as to what an appropriate sentence would be.

25   This is a case where I have reviewed every single image, every

1   video that this defendant viewed, reviewed and saved.  You have

2   to understand that in this case the defendant did not just

3   receive child pornography.  It's not just a simple case where he

4   searched for it, received it, had it on his computer.  That

5   is bad enough in and of itself.  He saved it.  He saved it onto

6   CD's, he saved it onto DVD's, in excess of 200 images and

7   videos.  He did that --

8         THE COURT:  Well, that doesn't seem to support a

9   sentence at the low end of the guidelines.  That seems to

10   support a sentence at the high end of the guidelines.

11         MS. JOHANNES:  Well, Judge, I'm giving you -- the low

12   end, Judge, just to be clear is 151 months.  I understand that

13   that's over 12 years.  It's relatively high is what Mr. Gonzalez

14   is going to argue and has argued in his papers.

15         We're asking for the low end as opposed to the high end

16   in this case because of the other factors that Mr. Gonzalez has

17   stated in his papers regarding the defendant's background.

18         THE COURT:  Okay.

19         MS. JOHANNES:  I have also considered the defendant's

20   age.  I have considered other sentences given in other child

21   pornography cases for distribution.  I have considered the

22   defendant's personal history, his family history.  That's why

23   I'm not asking for the high end, but I think that the acts that

24   were committed here are pretty egregious.

25         The videos, Judge, and I've printed out some of the

1   images, and I've also printed, Judge, so you can see, the title

2   names in the file as to what was saved on the DVD.

3        THE COURT:  I've read it.

4        MS. JOHANNES:  I don't think I've submitted that,

5   Judge.

6        THE COURT:  No, the titles are part of the presentence

7   investigation.

8        MS. JOHANNES:  Part of, but what I have here for the

9   Court, Judge, is all of the title names and files on the DVD.

10       THE COURT:  Okay.  Let me see that and let me see the

11  images without anybody else seeing them.

12       MS. JOHANNES:  Judge, I'll pass that up, but it's for

13  that reason that we oppose a variance in that case.

14       THE COURT:  I understand.  No, but the way you were

15  arguing, it seemed like it was for high end or even above the

16  guidelines.

17       MS. JOHANNES:  I'm just saying that, because I know

18  what Mr. Gonzalez is going to --

19       THE COURT:  Well, he said it in writing.

20       Okay.  Mr. Gonzalez, what do you think I should

21  sentence him to?  You mentioned five years in your pleadings

22  which means just the minimum.

23       MR. GONZALEZ:  Yes, Your Honor.

24       THE COURT:  Which means it wouldn't even -- it doesn't

25  matter what the images are?  It doesn't matter what the

1   depictions are?

2          MR. GONZALEZ:  Judge, what I'm arguing to the Court is

3   this:  Yes, I'm asking the Court to sentence him to the 60

4   months, and Judge, as the Court is aware in the pleadings --

5   first of all, Judge, what I would like to say is that in this

6   district and as well as the entire nation, two-thirds of all

7   sentences involving this section are below guideline sentences.

8          THE COURT:  You know what's going to happen?  That's

9   why Congress passes minimum-mandatory sentences.  That's why

10  they did it in the first place, precisely for that reason.

11         MR. GONZALEZ:  But in this case, Judge, as Judge King

12  in the Riley opinion and other judges all over --

13         THE COURT:  I read it.

14         MR. GONZALEZ:  -- the United States, United States

15  versus Hanson, basically what's happened with these guidelines,

16  Judge, is that back in 1994, from '94, the mean of these types

17  of sentences was 36 months, and they've been increased basically

18  by Congress pressuring.  It's not allowed the commission to do

19  its normal work in these types of case.

20         THE COURT:  And I should disregard what Congress wants?

21  That's why people elect them.

22         MR. GONZALEZ:  That's right.  And the Court being a

23  separate branch of our system has the opportunity, considering

24  the 3553(a) factors and how these guidelines as applied, my

25  argument is as applied to Mr. Cubero, how that minimum is for

1   people like Mr. Cubero, a first-time offender who's 30 years of

2   age, Judge, who's worked legitimately all his life, who does not

3   have a history of crime.  And so --

4           THE COURT:  But that's typical of individuals who

5   commit this offense.

6           MR. GONZALEZ:  Pardon me?

7           THE COURT:  That's typical of individuals who commit

8   this offense.  They don't go out and rob 7-Eleven, you're right.

9           MR. GONZALEZ:  They don't, Judge.  But Judge --

10          THE COURT:  But don't they victimize the children by

11  having a market?  I mean, these are preteens who are in these

12  images.

13          MR. GONZALEZ:  I understand, Judge, but he did not

14  commit any child molestation or anything of that nature.  He

15  commits the crime as a consumer --

16          THE COURT:  But someone does in the images.  Someone

17  does in the images, right?

18          MR. GONZALEZ:  Yes.

19          THE COURT:  And it gets spread.  Isn't the victim

20  victimized each and every time the image gets distributed or

21  even seen?  Don't you think?

22          MR. GONZALEZ:  Judge, that may be so, but what I'm

23  getting at is, Judge, that I want to argue to the Court and

24  point out cases to the Court in this district and within the

25  Eleventh Circuit that show conduct that is even more, you know,

1   egregious than my client's and the type of sentences that have

2   been imposed and that's what --

3           THE COURT:  I saw them.  You put them in writing.

4           MR. GONZALEZ:  I know, Judge, but if I may just

5   highlight some of them.

6           THE COURT:  Go ahead.

7           MR. GONZALEZ:  Okay.

8           THE COURT:  But I read everything already.

9           MR. GONZALEZ:  I know, Judge, but Judge, here's the

10  thing:  Before I go to those cases, I just want to --

11          THE COURT:  Well, I've read them.  You don't have to

12  read them.  You don't have to read them to me.  I read it.  You

13  did the right thing.

14          MR. GONZALEZ:  These are different cases, Judge.

15          THE COURT:  Oh, that you didn't put in writing.

16          MR. GONZALEZ:  That I did not put in writing, and these

17  are basically -- if you take a look, Mr. Cubero starts out at a

18  Level 22.  Okay.  Then he gets 15 bumps up to a Level 37.

19  Judge, a level --

20          THE COURT:  Why does he get that?

21          MR. GONZALEZ:  Pardon me?

22          THE COURT:  Why does he get that?

23          MR. GONZALEZ:  He gets that because there's a computer

24  used, because distribution is also tossed in, because of the

25  amount of images.  Once you go over 600, you get a five-level

1    bump-up.  So he ends up at a Level 37.

2              Judge, Level 37 for someone who is basically in his

3    residence, you know, behind a computer looking at images or

4    downloading images, that's his conduct --

5              THE COURT:  Do I consider the type of images?

6              MR. GONZALEZ:  Yes, you do, and all of these cases --

7              THE COURT:  They're pretty tough.

8              MR. GONZALEZ:  All of these cases, Judge, are the same

9    images.  They're not any different.

10             THE COURT:  I don't know what I would have done.  Maybe

11   they're too lenient.  Maybe those judges are too lenient.

12   Congress thinks so.

13             MR. GONZALEZ:  It could be, Judge, but what I wanted to

14   point out is that these are some of your colleagues that I think

15   you would agree or the Court would agree that they're not the

16   most lenient judges in this circuit, in this district, Judge.

17   But --

18             THE COURT:  What do I do when the image is, 2006, Older

19   Man and then the expletive with the F, Little Boy; Older Man F's

20   Little Boy?  I mean, these are the type of images that we're

21   talking about.

22             The reason I'm mentioning that is because the family

23   that has written you indicate all are in disbelief that

24   Francisco could involve himself in downloading and viewing child

25   pornography.  And I understand, relatives are generally in

1    denial, but these images are what they are, and you know, we

2    almost are too embarrassed to mention what it is, but it has to

3    do with a dog, child 10 years old, 9 years old, based upon the

4    titles, right?

5            MR. GONZALEZ:  Yes, sir.

6            THE COURT:  And so I mean, we can't stay away from that

7    type of thing, that they involve pedophilia, right?

8            MR. GONZALEZ:  Yes, but Judge, what he was searching

9    which, you know --

10           THE COURT:  "Boylove gay pedo preteen boy sex child `

11      porn."

12           MR. GONZALEZ:  Judge, he wasn't searching for that.

13   Okay?  That comes --

14           THE COURT:  He wasn't?  He downloaded it and saved it.

15           MR. GONZALEZ:  Well, because, Judge, when I download in

16   bulk, you get attachments that come with it.  His, as he's

17   indicated to Dr. Swan --

18           THE COURT:  Over what period of time?

19           MR. GONZALEZ:  Judge, this was --

20           THE COURT:  Six months?

21           MR. GONZALEZ:  2011, last year, a time where he was

22   going through cocaine abuse, a seven or plus year relationship

23   had ended.  You know, there is a history there that is being

24   addressed now through the program installed by the Court, the

25   Sexual Offender Program.

1        THE COURT:  Yeah, but he's going to go to prison

2   anyway, right?

3        MR. GONZALEZ:  I understand.  I understand that.

4        THE COURT:  The only question is for how long.

5        MR. GONZALEZ:  Exactly, Judge, and this is what I

6   wanted to point out to the Court.  Judge, an individual, okay,

7   involved in bank robberies with a firearm, okay --

8        THE COURT:  Some people may think that is less serious

9   than distributing "nude child porn, private daughter," images.

10       MR. GONZALEZ:  They may, but Judge, there's no evidence

11  that he distributed anything.

12       THE COURT:  Congress thinks so.

13       MR. GONZALEZ:  No, I understand.

14       THE COURT:  Right?

15       MR. GONZALEZ:  But Congress says that you can sentence

16  him to the minimum of the 60 months, and that's what Congress

17  says.

18            What happens with these cases, Judge, is that all of

19  the cases end up, no matter who the person is before the Court,

20  they end up at the high end.  Look at the cases before Judge

21  Jordan, before Judge King, before Judge Moore, they all start

22  anywhere in the 210-month range or 151 range.

23       THE COURT:  What sentence did Judge Moore give in the

24  case?

25       MR. GONZALEZ:  60 months.

Sentencing

1        THE COURT:  And what was the difference between that

2   case and this case?  Does the prosecutor know?

3        MS. JOHANNES:  Yes, I do.

4        MR. GONZALEZ:  Well, Judge --

5        THE COURT:  Tell me the difference and I'll hear from

6   both.

7        MS. JOHANNES:  Mr. Gonzalez cites two cases in which

8   Judge Moore was the presiding judge.  One of the cases is

9   DeMarco.  The second case is a Mr. Guillermo Martinez.  I was

10  the prosecutor on that case.

11       The DeMarco case is the only case in which our offices

12  agreed to a variance.  DeMarco was a very, very different

13  individual.

14       In the DeMarco case, Mr. DeMarco's mother came to the

15  sentencing hearing and testified that she allowed her son from

16  the ages of 5 to 10 to be raped and abused by variance men and

17  she did it for money.  Mr. DeMarco had no images -- while they

18  were a lot of images, he had no images of infants.  He had no

19  images of toddlers.  He had no images of the Vicky series in

20  which Vicky is being raped by a dog.  This defendant has those

21  images.

22       I'd also like to point out that the titles that you're

23  reading, Your Honor, are not just what he downloaded.  There are

24  what he saved onto a DVD.  That's not just what appeared on his

25  computer miraculously from him being on the Internet.  They're

1    what he saved onto a DVD.

2            The other case that he cites, the Judge Moore case, I

3    was the prosecutor on.  It's Guillermo Martinez.  Guillermo

4    Martinez --

5            THE COURT:  That was whose case?

6            MS. JOHANNES:  It's Judge Moore.

7            MR. GONZALEZ:  Judge Moore.

8            THE COURT:  Okay.

9            MS. JOHANNES:  Guillermo Martinez was a straight

10   possession case.  It wasn't distribution.  It wasn't receipt.

11   So the guidelines by default are lower in that case.  Judge

12   Moore sentenced -- mine you, there's no minimum mandatory in

13   this case, because it's just possession, and Judge Moore

14   sentenced the defendant to 84 months.  In that case, he

15   sentenced him to 84 months which was the low end of his

16   guideline range.

17           The only case that Judge Moore that I'm aware has

18   varied downward is the case that we agreed to a variance, which

19   is DeMarco, and it's very different on the facts.

20           THE COURT:  Okay.  Mr. Gonzalez, what do you want to

21   say, and then I'll hear from your client.

22           MR. GONZALEZ:  Judge, may I continue?  I have not been

23   allowed to raise the argument that I was trying to pursue.

24           THE COURT:  Which argument was that that you're not

25   allow to raise?  You didn't raise it in writing?

1          MR. GONZALEZ:  No, Judge.  Give me one second.

2          THE COURT:  Which argument was that?

3          MR. GONZALEZ:  Your Honor, give me a second.

4          THE COURT:  Well, you said you weren't allowed.  I

5   don't know what you mean by you weren't allowed.

6          MR. GONZALEZ:  No, no.  What I'm saying is I have not

7   been -- we've gone off --

8          THE COURT:  Which argument is that?

9          MR. GONZALEZ:  May I proceed?

10          THE COURT:  No, but tell me which argument I didn't

11   allow you to make.

12          MR. GONZALEZ:  No, Judge.  I was trying to point out --

13          THE COURT:  That other judges have been lenient.

14          MR. GONZALEZ:  No, no.  I was trying to point out other

15   types of cases and how they correlate with this case.

16          THE COURT:  But if the cases don't involve infants,

17   they are different.  Did Judge Moore's cases involve infants,

18   both of them?

19          MS. JOHANNES:  The second case, Guillermo Martinez,

20   did.  He had two CDs.  He had possession of two CDs.  Some were

21   infants.  He only had 25 vidoes.

22          THE COURT:  That's the one where there was no

23   distribution.

24          MS. JOHANNES:  There's no distribution and he scored

25   out his guidelines and he got his guidelines.

1          THE COURT:  Okay.

2          MR. GONZALEZ:  Judge, may I explain why he scored --

3     did not get distribution?  And that was Mr. Martinez, who's 50

4     something years of age.

5          THE COURT:  The age doesn't matter.

6          MR. GONZALEZ:  No, but he got the benefit --

7          THE COURT:  Whether you're 30 or 50 or 60 or 20, the

8     age doesn't matter.

9          MR. GONZALEZ:  Judge, he got the benefit that he

10    cleaned out the computer.  He wiped it out.

11         See, what happened was the agents, the same way that

12    they went into my client's computer, did the same thing with

13    Mr. Martinez' computer.  By the time that they went ahead to get

14    a search warrant to go into his residence, Mr. Martinez was

15    basically wise enough or criminally minded and savvy enough,

16    sophisticated, that the reason they couldn't find anything was

17    that they cleaned out and wiped out the computer.  He was smart

18    enough, opportunistic enough.  So therefore, he avoided that.

19         THE COURT:  Maybe he deserved a variance from that.  I

20    don't know, but I'm not sentencing him.  I want to talk about

21    Cubero.

22         MR. GONZALEZ:  And he got 78 months, not 84.  He got 78

23    months, Mr. Martinez did, by Judge Moore, because the Government

24    went along with that, even though they told Judge Moore, yes, we

25    could not get distribution charges on him because there was

1    nothing in the computer, so we couldn't tie him up into that.

2    So in that case which -- I didn't argue that case.  The

3    Government argued that case.  I just responded to it in my

4    pleadings.  You know, that case, Martinez got the benefit of his

5    criminal acts, okay, and basically got a 78-month sentence.

6         Now, what my client's conduct is more in line with is

7    cases like Riley.  Here's Riley.  Riley is a case that there are

8    900 stills, over 10 videos, 1,650 images which is more than

9    Mr. Cubero.  The Court went on to say or found Riley to be a

10   fairly typical first-time offender.  In that case, Judge, Riley

11   was conversing on an online chat room expressing an interest to

12   engage in sexual behavior with a mother and a 10-year-old

13   daughter and actually even requested pictures of the 10-year-old

14   daughter.

15        THE COURT:  I'm going to tell you, if that were before

16   me, I would disagree with Judge King.  It's one of the few times

17   that I probably would, but based upon what you're telling me, I

18   think it was sufficiently egregious and that probably deserved

19   the top of the guidelines.

20        MR. GONZALEZ:  Okay.

21        THE COURT:  Just because another judge does it, doesn't

22   mean that I would.

23        MR. GONZALEZ:  I understand, Judge.  I understand,

24   Judge.

25        THE COURT:  Because it's egregious.

1          MR. GONZALEZ:  I agree.

2          THE COURT:  What you're telling me is egregious.

3          MR. GONZALEZ:  It is egregious, but I'm telling you

4    that the Court found that his conduct was typical of a

5    first-time offender, and what I'm trying to show you, Judge, is

6    that that individual's conduct nowhere compared to his.

7          THE COURT:  But if something is typical, then we should

8    sentence within the guidelines, if it's the typical, right?  We

9    only vary if it's not, right?

10          MR. GONZALEZ:  But here's the thing:  What the

11   Government is arguing to you is not the typical.  66.7 percent

12   of all of these cases, Judge, in this district, are sentenced

13   below the guidelines.  So all of your -- and we don't know on

14   those other cases why the district judges in the Southern

15   District are staying within 20 something percent, the 30 -- it's

16   two-thirds that are below guidelines within our own district and

17   that's Judge Moore and that was one of the factors in the

18   DeMarco case, Judge.

19          With Judge Moore, the sentencing went over at least two

20   days.  Okay?  One day where he took testimony and then he asked

21   the probation office, the officer to get him statistics with

22   regard to this particular guideline, 2G2.2, with regard to the

23   Southern District.  And what the probation office provided Judge

24   Moore, which, you know, convinced him to go and give the

25   60-month sentence was that 66 percent of the child pornography

1   distribution cases in the Southern District in year 2010 -- and

2   by the way, I submitted I think it's my fourth supplement and

3   nothing has changed.  The numbers are actually even consistent

4   or even going higher on the national level for 2011 and 2012.

5   They were sentenced below the advisory guideline range.

6           So, Judge, a blow guideline range is clearly within the

7   heartland of similar situated cases in the Southern District,

8   and that is what Judge Moore relied upon in giving Mr. DeMarco a

9   sentence of 60 months to be followed by lifetime supervision.

10  Lifetime supervision, and here, Judge, in DeMarco the defendant

11  used peer-to-peer file sharing system, identical to what my

12  client had.  The defendant in that case had no criminal history,

13  the same as my client.  He suffered from mental and emotional

14  disorders.

15          Judge, my client, first of all, was rejected at birth.

16  His father -- he's never known his father.  Okay?  It's one of

17  the things that he's dealt with.

18          THE COURT:  He's never known his father.  We've had two

19  recent presidents in the same situation; President Obama,

20  elected twice, and President Clinton, elected twice.  Not

21  knowing your father doesn't mean that you view child

22  pornography.  You can become president of the United States.

23          MR. GONZALEZ:  Yes, Judge, and that's just one factor.

24          Judge, in addition to that, part of his emotional

25  trauma and psychological trauma was that at the age of seven,

1  between seven and eight, his parents then divorced, his mother

2  remarried.

3          THE COURT:  That's a third of the country.

4          MR. GONZALEZ:  That's a third, but at the age of eight,

5  he walked in on his grandmother who basically was raising him

6  and taking care of him, who had committed suicide by putting a

7  bag over her head.

8          THE COURT:  That's something.

9          MR. GONZALEZ:  That's a significant trauma.

10          THE COURT:  That is a significant trauma.

11          MR. GONZALEZ:  The family did not know how to deal with

12  that, Judge.  The way the family dealt with it is initially

13  there was the pain and the suffering.  He went to like one

14  counseling session, and then they never spoke about it again.

15          If you look at Dr. Swan, if you look at the report --

16          THE COURT:  I read it.

17          MR. GONZALEZ:  -- from Perez-Castro, the psychosexual

18  evaluation --

19          THE COURT:  I read it.

20          MR. GONZALEZ:  -- they have all said that he is

21  progressing in the treatment.

22          THE COURT:  But he's going to get prison time in any

23  event.  He's not going to be out getting treatment.

24          MR. GONZALEZ:  I know that, Judge.

25          THE COURT:  It's only a question of how much time he's

1  going to get.

2          MR. GONZALEZ:  Exactly, Judge, and what I'm saying to

3  the Court is, Mr. Cubero is not the type of individual just to

4  forget about him and ship him off.  That's what the Government

5  wants.  Judge --

6          THE COURT:  No, the Government wants me to give him a

7  sentence within the guidelines, the low end of the guidelines.

8          MR. GONZALEZ:  Judge, Judge, these two cases, you're

9  familiar with, because these were your cases, and I know that

10  they're not this type of case, but I'm bringing it just in

11  context, Judge.

12          That gentleman that robbed the two banks with a gun, we

13  had the trial.  He had obstructed justice, because he testified.

14  That gentleman who went in a bank with a gun, received, after

15  being obstructed, because he went to trial, forced the victims

16  to come in and testify, and Your Honor saw their testimony, they

17  were shaken up, that gentleman got 138 months, Judge.

18          Dominick, Terry Dominick Blanco was one of the

19  relatives of either Falcon or Magluta, 91-6060, but he didn't

20  plead or wasn't tried when you tried that monster of a case, you

21  know, many years ago.

22          Terry Dominick Blanco was a fugitive for 12 years from

23  the law.  Just one of those stash houses, Judge, was over 3500

24  kilos of cocaine, the highest level, Level 38.  Terry Dominick

25  Blanco was apprehended 12 or 14 years later.  He had been a

1   fugitive in Mexico and he had received -- and Pat Sullivan was

2   the prosecutor.  So we know that Mr. Sullivan is not an

3   easygoing prosecutor.  I mean, he's an excellent prosecutor, but

4   he is a tough prosecutor.  Judge, Mr. Blanco received a

5   sentence, a guideline sentence of 135 months imprisonment to be

6   followed by three years.

7          These are people that lived and committed crimes on an

8   active basis and I can go on.  There are other cases where

9   people have robbed, Hobbs Act robberies, and have received, you

10  know, the type of sentence that the Government is asking for my

11  client.

12         So I'm pointing that out to you to show you that the

13  Court has the authority using the 3553(a) factors, because --

14  Judge, I just want to point out a couple more cases and

15  sentences that I think are in line with my client because of the

16  type of conduct.

17         Matthew Clark was viewing child pornography, uploading

18  and storing child pornography on a file sharing network.  He

19  scored out to 151 to 188.  Judge Graham granted him a variance

20  and sentenced him to 66 months, which is actually, the five-year

21  minimum, plus another six months.  That gentleman was more or

22  less the same age as my client.  DeMarco, I pointed out was 35.

23         Carlos Ramirez, 46 videos and 500 still images for a

24  total of 3950 in images, a lot more than my client.  The

25  Government's response in that case, and this is a case before

1    Judge Seitz, the Government's response and the Factual Proffer

2    stated that the images that the defendant possessed portrayed

3    sadistic or masochistic conduct.

4         The initial guidelines were 210 to 240, and the

5    Government in their response said, Judge, give him the 210.

6    Well, Judge Seitz agreed with the defense and sustained several

7    of the objections and the guidelines then were 121 to 151.  The

8    Government's position then at that point also -- now they went

9    from 210, and said, well, give him the bottom of 121.  Judge

10   Seitz gave him 60 months.

11        We already went over Martinez.

12        There are a couple of more cases here that are very

13   significant and appropriate.  Okay?

14        Here we have Jonathan Quintana, which is a case before

15   Judge Gold, and it's there in the guidelines.  Judge, Judge Gold

16   granted a variance and went only down to 84 months, but his

17   quotation was -- and I have the sentencing transcript, but for

18   the length of time that this individual was downloading -- and

19   it was over two and a half years -- and the amount of images

20   which was a staggering amount -- there were over anywhere

21   between 16,000 because at one point in the sentencing they talk

22   about 16, but in the criminal Complaint, it says that there was

23   over 116,000 images -- okay, the Government's prosecutor, I

24   think it was Mr. Roy Altman, in that particular case, said to

25   Judge Gold -- and I have the transcript there -- Judge Gold,

1    I've never seen a case with so many of these.  So but for that,

2    Judge Gold said, he would have considered going down to the 60

3    months, and he gave that individual 84 months.  He gave him a

4    variance.

5            The Government cited the Ricardo Maciel case before

6    Judge Jordan, and in their pleadings, they talked about that

7    Judge Jordan didn't do -- it was not a guideline sentence.

8    Judge Jordan gave Mr. Maciel a 66-month variance reduction,

9    Judge.  Mr. Maciel was at 210 to 262.  Because he went

10   apparently either to trial or lost his acceptance -- because my

11   client is at 37, but because of acceptance he comes down to

12   34 -- Judge, in that case, the amount of videos, all right, were

13   41 -- at one place there's also confusion there.  There's 41

14   videos.  It would make it 10,800 images compared to my client's

15   1,475.  This is like almost 10 times more, but there's another

16   mention there that there was 144 videos which would have made it

17   over 10,800 images.  This case involved the Vicky series.  These

18   types of images that you have in front of you, Judge, Judge

19   Jordan went from 210 and deducted 66 months.  Okay?

20           So I'm showing you cases, Your Honor -- and by the way,

21   Judge Jordan, his analysis -- I have the transcript there -- you

22   know, we all know Judge Jordan does a fantastic work, but Judge,

23   in his analysis, he talks about it and compares two Eleventh

24   Circuit cases in reaching that decision and taking all things

25   into consideration.  And this is a Vicky series.

1        He mentions United States versus McBride, the Eleventh

2   Circuit 2007 case where the Eleventh Circuit upheld the variance

3   from 151 to 188 down to 84 months and 10 years of supervised

4   release.  In that case, Judge, there was 981 images.  My client

5   only had 200, and there were 45 videos, triple the amount of

6   videos that my client had, for a total of 4,356 images compared

7   to Mr. Cubero's 1,475.  The Eleventh Circuit upheld that.

8        United States versus Gray which Judge Jordan cites

9   also, the Eleventh Circuit in 2006 said in that case -- the

10  guidelines were 151 to 188 and the gentleman was sentenced to 72

11  months.  Gray had been downloading child pornography for

12  approximately five years, Judge, not a five to six, seven-month

13  period of time that my client was, and the Court upheld that,

14  upheld that, and that's a 72-month sentence which is basically

15  six years.

16        So you have these sorts of cases.  So here we have

17  Judge Jordan giving 66 months.

18        The Shawn Beauvais case, Judge Scola gave a 50 percent

19  variance.

20        THE COURT:  You didn't put that in your pleadings?

21        MR. GONZALEZ:  Yes.  And I'll wrap it up.

22        THE COURT:  Don't repeat.  I want to hear from your

23  client.  That's what I want to do, because I got the picture.

24        MR. GONZALEZ:  And Judge, what I wanted to say --

25        THE COURT:  And you've gone through it.  We're going

1  case by case.

2       MR. GONZALEZ:  In that case, there was 131,500 images

3  when the prosecutor told the agents stop looking, and that

4  gentleman got 50 percent variance from 151 to 75.

5       Judge, the Court, and you want to hear from him and I

6  just have a brief --

7       THE COURT:  Of course, he's the defendant.

8       MR. GONZALEZ:  Okay.  And Judge, let me just finish two

9  points and then I'll --

10      THE COURT:  Go ahead.

11      MR. GONZALEZ:  Okay.  Dr. Swan and Ms. Perez-Castro as

12  well as the person from the drug counseling, have all indicated

13  that he is doing fantastic responding to treatment.  They both

14  have concluded that had Mr. Cubero presents a low risk of

15  reoffending and is an excellent candidate for treatment.

16      He is responding, Judge.  As the PSI says, he's never

17  had one blemish with the law.  He's had a clean slate.  He fell

18  last year, got into overusing cocaine, binging the alcohol,

19  something that all led up, not as an excuse, but, you know, the

20  Court needs to know what was going on in this individual's life.

21      So Judge, he's 30 years old.  A five-year sentence, be

22  it five years, be it 10, 15 of supervision, what better for

23  probation who will be able to keep an eye -- you know, if he

24  blinks, he's going away, and all of these cases, depending on

25  the severity, the amount of supervision has been anywhere

1    between five, ten, and 15, except for the Judge Moore case that

2    he gave the individual the 60 months, and he gave him a lifetime

3    supervision.

4           I'm not going to recommend, you know, because I've

5    asked for five years, but I can tell the Court that you're not

6    going to see this individual back.  This was a lapse certainly

7    in judgment.  It was criminal.  He's admitted it.  He's given

8    you the acceptance letter.  He's given you an additional letter.

9    He's given statements to all of these people in the programs,

10   and he has recognized and matured which he wasn't.  He was

11   immatured, you know, and doing the wrong things and there's no

12   doubt about it.

13          What I'm getting at, Judge, finally is that, this is

14   not the type of individual to launch -- 151 months, that's a

15   major, major criminal.  There's nothing to indicate that this is

16   a major criminal, and a 60-month sentence with a lengthy time of

17   supervision will certainly be a deterrence for someone who

18   basically got behind a computer and fiddled with it and fiddled

19   with it in wrong ways by downloading this stuff.

20          THE COURT:  Mr. Cubero, what do you want to say?

21          THE DEFENDANT:  First, I want to say, Your Honor, I

22   want to thank my family for their incredible support.  I also

23   want to say I'm disgusted by my actions.  It was done at -- it

24   was done at a time in my life where I was ready to die.  I

25   didn't care about the consequences to any action.  I wasn't

 1  happy with my life, and therefore, I didn't care about the

 2  consequences.  I didn't think I would be around.

 3          I've been through treatment and my family has been

 4  around and it's the first time I think I've ever been thinking

 5  clearly in a very long time.  I still feel that I really do have

 6  a lot to offer.  I have so many, you know, things I want to do

 7  and I want to improve myself and this is something I'm going to

 8  live with for the rest of my life and I am disgusted by it.  But

 9  at the same time, I think being arrested also saved my life, and

10  I just plead for a fair sentencing, Your Honor.

11          MR. GONZALEZ:  Judge, briefly, I think Mr. Cubero, the

12  father, wanted two words --

13          THE COURT:  No.

14          MR. GONZALEZ:  -- very short.

15          THE COURT:  No.  I got the letters.

16          MR. GONZALEZ:  No?  Okay.

17          THE COURT:  I know he wants me to give the most lenient

18  sentence.

19          MR. GONZALEZ:  Okay.

20          THE COURT:  You know, as you indicated by the

21  memorandum, I understand why they would be in denial, and they

22  don't see these images because they're not allowed to see the

23  images.

24          MR. GONZALEZ:  Judge, to finish on that point, there's

25  22, 23 character reference letters.

Sentencing

1          THE COURT:  I read them.

2          MR. GONZALEZ:  A lot of those people were not able to

3   be here because of the different changes in the sentencing and I

4   understand Judge Seitz became ill and I appreciate the Court

5   taking over, but I think we probably would have another 15 or 20

6   more people to lend support.

7          THE COURT:  I understand.

8          MR. GONZALEZ:  There are these four or five that are in

9   the audience.

10          THE COURT:  He's going to need it afterwards, not

11   during.

12          MR. GONZALEZ:  Pardon me?  He's going to need it.

13          THE COURT:  He's going to need that.  They're here for

14   him.

15          MR. GONZALEZ:  So I just wanted to let the Court know

16   that, and on the request level, Judge, I just wanted the Court

17   to recommend to the BOP the 500-Hour Drug and Alcohol Course.

18   He's been doing rather well with regard to treatment, the Sex

19   Offender Treatment Program, which is part of all the standard

20   requirements in this type of case, and then a facility as close

21   to South Florida as possible based on the type of charges and

22   the availability of the BOP.

23          THE COURT:  All right.  The first obligation of the

24   Court is to properly calculate the guidelines.  There are

25   objections, because the offense involved distribution of child

1   pornography, the two-level enhancement consistent with

2   2G2.2(b)(3)(F).

3           Based upon the case law as I read it, I'm going to

4   overrule that objection and find that it's an appropriate

5   enhancement.  There are other enhancements including the fact

6   that the material portrays sadistic and masochistic conduct and

7   other depiction of violence, but there's no objection to that,

8   but that's also a four-level increase.  That's why it is

9   increased, and the passive distribution, I reject that argument,

10  at least for the computation of the guidelines.

11          These cases are difficult, because when you start

12  comparing individuals, everybody is different and every crime is

13  different, and the defense lawyer has done an admirable job in

14  comparing.  Look, are we more afraid of bank robbers with guns

15  or drug dealers?  There comes a point in time when looking at

16  the volume and the number of things is no longer relevant and

17  I've said this when it involves drug offenses, too, you know,

18  when people start arguing.  That's why on the quantity of drugs,

19  once you reach a certain level, it doesn't really matter for the

20  guidelines and like you mentioned in some cases where the agents

21  say, let's not look at anymore, we've got enough.

22          So even though the number, of course, matters, there's

23  a point where it really is nonsensical to start comparing.

24  Well, it's 1,500 versus 1,600 or it's 2,000 or it's the length.

25  I've rejected the passively sharing objection to the two-level

1    enhancement and the double counting.  So I'm going to find that

2    the guideline range is 151 to 188 months.

3          The purpose, of course, of the guidelines was to treat

4    people pretty much the same, and like Judge Moore, I am

5    concerned that there are variances.  I read all the statistics

6    on the variances on all cases and I will tell you that there are

7    variances throughout the nation and it would surprise no one

8    that in certain areas, certain districts, certain areas of the

9    countries, sentences are lower than others.  It's not a good

10   thing in my view, but it's part of our America, but that

11   involves also all sorts of crimes.

12         But I also have to consider that Congress is pretty

13   unanimous.  You know, we really don't have too much bipartisan

14   support for things, but this is the one thing; and to me, the

15   type of images that are involved here, especially the ones

16   involving toddlers being raped basically -- that's what it is,

17   toddlers being raped is -- and I won't mention the

18   titles, because the family and others will be offended if they

19   just even heard the titles, let alone view the images.  So it's

20   difficult for me to say that that is not egregious and that's a

21   reason for variance.

22         I have varied in other cases, but the only concern I

23   have is the statistics that say that some judges are varying,

24   but I've heard some of the distinctions and that's the problem

25   when we have some judges varying and others not and then we

1    start getting into the particular characteristics of the

2    defendant.  But we can't do it based on the numbers, you know.

3          Two-thirds of the cases, and I take your word for it,

4    the statistics show variances, one-third are not.  There will

5    come a time when Congress may react as a result of that, but

6    that's not for me to decide.

7          In order for me to go above the guidelines, I've got to

8    have reasons.  In order for me to go below the guidelines -- I'm

9    not convinced that based upon the images, I should go below the

10   guidelines.  In fact, I think a reasonable sentence would be at

11   the top of the guidelines.

12         There is no question he's going through treatment.

13   He's going to go through treatment for the rest of his life.

14   He's going to need his family, but I'm not going to sentence

15   below the guidelines in the exercise of my discretion.

16         Therefore, it is the judgment of this Court that you,

17   Francisco Cubero, be committed to the custody of the Bureau of

18   Prisons for a period of 151 months, 12 years and 7 months on

19   Counts 1, 2 and 3.

20         Upon release from imprisonment, you'll report to the

21   probation office and you'll be placed on supervised release for

22   life, because you'll need lifetime treatment and you know that.

23   And you know, I am sympathetic to the fact that you've

24   recognized your problem, and it's like being an alcoholic or a

25   drug addict, it takes time.  I can't give you 151 months on

1  Counts 2 and 3 because the maximum is 10 years.  120 months on

2  that, because that's possession; but the distribution, which is

3  the much more serious, 151 months.  Those sentences will be

4  concurrent.  There is a $300 special assessment.

5       As part of the supervised release, you shall comply

6  with the standard conditions including the special conditions;

7  computer modem restriction, computer possession restriction,

8  mental health treatment, substance abuse, both the 500-Hour

9  treatment while in prison which takes some time off.  There's a

10 five-year minimum mandatory as to Count 1, but you get time off

11 if you participate in that.  The Sex Offender Treatment during

12 supervised release and in prison.  No contact with minors in

13 employment.  No involvement in youth organizations when you get

14 out.  The Sex Offender Treatment.  I'm going to restrict you

15 from possessing of any sexual material.  I haven't done that in

16 other cases, but I will in this case because you, yourself, said

17 that's how it got started by just moving up or down as you can

18 see it.

19      And I know it's a harsh sentence, but I think it's

20 within the spirit of what Congress wants, and that's my oath --

21 even though I have the discretion to vary and other judges

22 have -- after reviewing the images, reading all the memorandums

23 and the doctor's report.  And you've got a long way to go.

24      I'm going to take you into custody today, because the

25 type of sentence that I'm giving you does pose a risk of flight.

1          MR. GONZALEZ:  No self-surrender over the holidays,

2    Judge?

3          THE COURT:  No, I sentence people the same whether it's

4    Thanksgiving, St. Valentine's Day or Easter.  I can't sentence

5    people differently because of the holiday.

6          You know, you've got to do your time, and I feel very

7    sorry for the family and I know you do, too.  I know you do,

8    too, because they have to put up with this offense.

9          You have the right to appeal.  Your lawyer will file a

10   Notice of Appeal if you want to do that, and that Notice of

11   Appeal has to be filed within 14 days.

12         Now that I have imposed a sentence at the low end of

13   the guidelines, are there any objections to the findings of

14   facts, conclusions of law or manner of imposition of sentence,

15   from the Government?

16         MS. JOHANNES:  Nothing from the Government, Your Honor.

17         THE COURT:  From the defense?

18         MR. GONZALEZ:  Your Honor, I would just renew --

19         THE COURT:  Okay.  They are preserved.

20         MR. GONZALEZ:  -- under Jones --

21         THE COURT:  It's preserved and you'll file the Notice

22   of Appeal.

23         MR. GONZALEZ:  And the other being under reasonable

24   sentence, and the Court on appeal will look at procedure versus

25   substance with regard to the request for the variance.

```
 1          THE COURT:  It's there for appeal and you'll represent

 2   him.

 3          THE PROBATION OFFICER:  Our office had recommended a

 4   90-day restitution hearing just because we had not received a

 5   forensic analysis of images, so we don't know whether

 6   restitution is applicable in this case.

 7          THE COURT:  You're ready to proceed on restitution?

 8          MS. JOHANNES:  We're not, Judge.  We sent out the

 9   victim letters, from the victims that have been identified by

10   NCMEC, but that still requires time to get a response back.

11          THE COURT:  Okay.  You should have done it by today.

12   Restitution denied.  He's going to jail for 12 years.  You want

13   the people to come in?

14          Okay.  We're in recess until our trial.  I'm not

15   setting it for another day.

16      (The hearing was concluded at 11:51 a.m.)

17                  C E R T I F I C A T E

18      I hereby certify that the foregoing is an accurate

19   transcription of proceedings in the above-entitled matter.

20
     _01-27-13_____        _____ _____
21      DATE                   GILDA PASTOR-HERNANDEZ, RPR, FPR
                               Official United States Court Reporter
22                             Wilkie D. Ferguson Jr. U.S. Courthouse
                               400 North Miami Avenue, Suite 13-3
23                             Miami, Florida  33128    305.523.5118
                               gphofficialreporter@gmail.com

24

25
```